**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-23745-ALTMAN**

COMMODITY FUTURES
TRADING COMMISSION,

*Plaintiff*,
v.

TRADERS DOMAIN FX LTD. *d/b/a*,
THE TRADERS DOMAIN, *et al.*,

*Defendants*.
_______________________________________/

Kelly M. Crawford, as Receiver of
TRADERS DOMAIN FX LTD. *d/b/a*,
TRADERS DOMAIN, *et al.*,

**ANCILLARY CASE NO**.

Plaintiff,
v.

CF Preferred, LLC, et al., Juan A. Hernandez,
Lizette Hernandez, Vosh & Associates, Inc.,
Little Black Book Enterprises, LLC, GPD OTC, LLC,
Wealth Connection Global, LLC, Stormy Wellington,
HIM 500, LLC, D&K Investment Holdings,
Investment Partners, LLC, Fabian Guerra,
Gabriela C. Giralt, Kenneth Blount, Schneider
Enterprise Resources, LLC, Waterfall Holding, Inc.,
Real Hasta La Muerte, LLC, Peter B. Gross,
NDE Holdings, LLC, Amaury Lendeborg,
Doris M. Liriano, DTM Group, LLC,
Rozell Sims, RR Elite, LLC, Robert Rodriguez,
John Hopkins, TDH Properties Limited Partner,
Olalla Ranch, LLC, Jace Investment Group, Inc.,
Said Daibes Figueroa, Sharon B. Beck,
Juan Carlos German, NV Las Vegas Sunrise, LLC,
Novus Radar Technology, Ramon G. Fernandez, P.A.,
Sams Management, LLC, Jason K. Lobdell,
Boba Tree, LLC, Leigha Brisco, David Shands, LLC,
Jacob Morayniss, Antonio Gates, LLC, Alejandro Imar

Calderin, Brandon Sims, Full Send Investments, LLC,
Day Trading Lab, LLC,Loretta Dow Freyhof, Kos Partners, LLC,
L&N Group Holdings, LLC, The Finer Things, LLC,
Richard S. Lagrand Jr., TMD Shops, LLC,
Stuntgang, LLC, Davis Bowe Enterprises, LLC,
Angela Ramson, Blacksite Ranch, LLC,
Mena Millions, Inc., Sinetix, LLC, Darnell Self,
Self Defined, Inc., Heather H. Gross,
Patrice McKinney, Bolden Capital Group, LLC,
John Gabriel Mellein, Jamie L. Mellein,
L-C Green AG Developers, Ltd., Joi A. Robinson,
Alejandro D. Canto, Strong Holdings Group, LLC,
James Keith, Keith and James, LLC,
Tammie Mattish, Ashley Hughes, Tep Ly Cheam,
Ynot Capital, Inc., Jason Yarn Beck, Tavere Johnson,
Justin C. Griffin, Willy G. Contractors, LLC,
Haoran Shi Trade, Inc., JDC Marketing Solutions, LLC,
Patrick Corneluis McHugh, Bartercorp International, Inc.,
Rodney F. Credit, 241 Exotics, LLC, Elizabeth Rodriguez,
JJR Wireless Corp., Richard Chesler, Erik Johnson,
Katapult Events, LLC, SalesFS, LLC, Salesforce Properties, LLC,
Daniel Stammen, Global JTM Holdings, LLC, Lymari Rosa Lopez,
Tracy F. Glasper, Edra Lillian Bonsall, Signature Financial Solutions,
Guiseppe Montopoli, Angel Benjamin Pomavilla Morocho,
Lourdes C. Ortega Huerta, Leanp Construction, LLC, Monroe Family
Enterprises, Ltd., Millar Express, LLC, Ann Marie Burton,
Robert Garcon, PTG 365, LLC, PTG Enterprises, Inc.,
New Horizon Trust, Rajkumarie Shivmangal, Iwynn Productions, LLC,
FQP Supplies, LLC, Business Makeover, LLC, Ninjago, Inc.,
319 Investment Holdings, LLC, Brandon L. Thornhill,
Christopher Niemczyk, Cohen and Carter, LLC,
Conwell Capital Holdings Trust, Ching Hung Sun, Gabriel M. Lopez,
Jessica Lopez, Ecology Home BH, LLC,
The Advanced Procurement Team, Inc.,

Defendants.
_____________________________________/

## COMPLAINT

Kelly M. Crawford, in his capacity as the Court-appointed Receiver and assignee for, among other individuals and entities, Algo Capital LLC, Block

Consulting Services, LLC, MAS Capital Investments, LLC, Alpha Trader Firm, LLC, Profit Over Everything, Inc., Centurion TS Holdings, LLC, GMJ Marketing, LLC, Go Long Investments, LLC, The Nutrition Zone, LLC, Intelligenza, LLC, JVL Fortini Consulting, LLC, MTT9 Holdings, LLC, SAEG Capital Ltd., SECAP Holdings, LLC, and SACAP Holdings, LLC (the "Receiver"), files this Complaint against the Defendants listed below, and states:

**PROCEDURAL HISTORY**

1. On September 30, 2024, the CFTC filed a Complaint for Injunctive Relief and Demand for Jury Trial (the "Complaint") against Traders Domain FX LTD. d/b/a/ The Traders Domain; Ares Global Ltd. d/b/a/ Trubluefx; Fredirick Teddy Joseph Safranko a/k/a Ted Safranko; David William Negus-Romvari; Algo Capital LLC; Algo FX Capital Advisor, LLC, n/k/a Quant5 Advisor, LLC; Robert Collazo, Jr.; Juan Herman a/k/a JJ Herman; John Fortini; Steven Likos; Michael Shannon Sims; Holton Buggs, Jr.; Centurion Capital Group, Inc.; Alejandro Santiesteban a/k/a Alex Santi; Gabriel Beltran; and Archie Rice (collectively, the "Receivership Defendants"), commencing the above-captioned enforcement action (the "CFTC Action"). CFTC Action at ECF No. 1.

2. On October 3, 2024, the Court entered an Order granting the CFTC's Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO"). CFTC Action at ECF No. 10. The SRO was continued in effect pursuant to preliminary injunctions entered as to each of the

Defendants (collectively, the "PI Orders"). CFTC Action at ECF Nos. 38, 40, 41, 42, 48, 49, 53, 131, 144, 158.

3. On March 13, 2026, the Court entered an order expanding the receivership to include Block Consulting Services, LLC ("Block Consulting"), MAS Capital Investments, LLC ("MAS Capital"), Alpha Trader Firm, LLC ("Alpha Trader"), Profit Over Everything, Inc. ("POE"), Centurion TS Holdings, LLC ("Centurion TS"), GMJ Marketing, LLC ("GMJ Marketing"), Go Long Investments, LLC ("Go Long"), The Nutrition Zone, LLC ("Nutrition Zone"), Intelligenza, LLC ("Intelligenza"), and JVL Fortini Consulting, LLC ("JVL Consulting") (the "Expansion Order"). *See* CFTC Action at ECF No. 425.

4. The SRO, PI Orders, and Expansion Order, are collectively referred to as the "Appointment Orders."

5. The Receiver was also previously appointed as receiver in a related enforcement action arising in the U.S. District Court for the Southern District of Texas, styled *Commodity Futures Trading Commission v. Marcus Todd Brisco, et al.*, Case No. 4:23-cv-0036 (the "Texas Action"). The defendants in the Texas Action included, among other individuals and entities, Tin Quoc Tran.

6. On March 30, 2026, the Court in the Texas Action entered an order finding: (i) that certain entities owned and controlled by Tran were included within receivership, including MTT9 Holdings, LLC ("MTT9"), SAEG Capital Ltd. ("SAEG"), SECAP Holdings, LLC ("SECAP"), and SACAP Holdings, LLC ("SACAP"), (ii) that the assets of such entities were subject to the SRO in the Texas Action, and (iii) that

the Receiver, in his capacity as receiver in the Texas Action, was authorized to execute an assignment of his interests in MTT9, SAEG, SECAP and SACAP to the CFTC Action Receiver. *See* Texas Action at ECF No. 230.

7. The Receiver assigned his interests in MTT9, SAEG, SECAP, and SACAP, including without limitation, the ability to pursue all claims or causes of action held by or against MTT9, SAEG, SECAP, and SACAP to the receivership in the CFTC Action (the "Assignment"). *See* **Exhibit 1** at p. 2.

8. Algo Capital LLC, Block Consulting, MAS Capital, Alpha Trader, POE, Centurion TS, GMJ Marketing, Go Long, Nutrition Zone, Intelligenza, JVL Consulting, MTT9, SAEG, SECAP, and SACAP are collectively hereinafter referred to as the "Receivership Entities."

9. The Receiver's mandate under the Appointment Orders was to, *inter alia*, take possession, custody and control of all the Receivership Entities' assets, establish control of the Receivership Entities' businesses (to the extent they exist and continue to operate), prevent the withdrawal or misapplication of the Receivership Entities' funds, collect funds due to the Receivership Entities, obtain documents and records pertaining to the Receivership Entities' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* SRO.

10. The Receiver was also authorized to initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings the

Receiver deems necessary and advisable to preserve or increase the value of the Receivership Estate. *Id.* at ¶ 30(h).

**JURISDICTION AND VENUE**

11. This action is related to the claims in the CFTC Action, over which this Court has original jurisdiction pursuant to 28 U.S.C. Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1367(a). As such, this Court has subject matter jurisdiction over this action.

12. Plaintiff was appointed as Receiver in this District and the instant Complaint is brought to accomplish the objectives of the Appointment Orders.

13. When the Receiver was appointed in the CFTC Action, he opened numerous miscellaneous proceedings and filed Notices of Appointment of Receiver, including the CFTC Complaint and the SRO, in the following Districts: M.D. Ala (Case No. 2:24-mc-04033-RAH); N.D. Ala. (Case No. 2:24-mc-1403-RDP); S.D. Ala. (Case No. 24-mc-10-KD); D. Ariz. (Case No. 2:24-mc-00044-PHX); E.D. Ark. (Case No. 4:24-mc-00008-BSM); W.D. Ark. (Case No. 2:24-cm-66); C.D. Cal. (Case No. 2:24-ml-00128-UA); E.D. Cal. (Case No. 2:24-mc-00405-DJC); N.D. Cal. (Case No. 24-ms-80259); D. Del. (Case No. 24-516); M.D. Fla. (Case No. 2:24-mc-00012-JLB); N.D. Fla. (Case No. 1:24-mc-00170-AW); N.D. Ga. (Case No. 1:24-mi-00104-UNA); S.D. Ga. (Case No. 1:24-mc-00012-JRH); M.D. Ga. (Case No. 5:24-mc-00006); C.D. Ill. (Case

No. 1:24-mc-01002-JES-JEH); N.D. Ill. (Case No. 1:24-cv-10293); S.D. Ill. (Case No. 3:24-mc-00066-NJR); E.D. La. (Case No. 24-2467); M.D. La. (Case No. 24-mc-140); W.D. La. (Case No. 5:24-mc-00070); D. Md. (Case No. 1:24-mc-525); E.D. Mich. (Case No. 2:24-mc-51213-LJM); W.D. Mich. (Case No. 1:24-mc-00121-PJG); D. Nev. (Case No. 2:24-ms-00078); D.N.J. (Case No. 1:24-mc-00069-CPO); E.D.N.Y. (Case No. Misc24-4146); N.D.N.Y. (Case No. 1:24-mc-23); S.D.N.Y. (Case No. 1:24-mc-00477); W.D.N.Y. (Case No. 24-mc-35); E.D.N.C. (Case No. 5:24-mc-29-UA); M.D.N.C. (Case No. 1:24-mc-00022-UA); W.D.N.C. (Case No. 3:24-mc-00143-GCM); D. Or. (Case No. 3:24-mc-01039); E.D. Pa. (Case No. 2:24-mc-00058-UJ); M.D. Pa. (Case No. 3:CV-mc-0811); W.D. Pa. (Case No. 1:24-mc-00080-SPB); E.D. Tex. (Case No. 6:24-mc-00016); N.D. Tex. (Case No. 3:24-mc-0063-D); S.D. Tex. (Case No. 4:24-mc-01681); W.D. Tex. (Case No. 5:24-mc-1178); E.D. Wis. (Case No. 24-mc-42); W.D. Wis. (Case No. 3:24-mc-00007); D. Wyo. (Case No. 24-mc-250-S).

14. "Courts have long recognized a federal court's supplemental jurisdiction over actions related to a receivership established in federal court." *See Mandel v. Howard*, 2012 U.S. Dist. LEXIS 43948 (S.D. Fla. Mar. 28, 2012) (collecting cases). This Court has subject-matter jurisdiction over the state-law claims asserted in this complaint in this ancillary proceeding pursuant to 28 U.S.C. §§ 754 and 1367 because such claims are ancillary to the CFTC Action brought in the case captioned *CFTC v. Traders Domain FX Ltd. d/b/a, The Traders Domain, et al.*, Case No. 24-cv-23745-ALTMAN (S.D. Fla.), over which the court in the Southern District of Florida has

jurisdiction pursuant to 28 U.S.C. § 1331. Jurisdiction extends from the Southern District of Florida to any judicial district where receivership property is found.

15. The Receiver was appointed in the CFTC Action to accomplish the ends sought and directed by that action, and, as such, he may proceed under this Court's ancillary jurisdiction on claims with no other independent basis for federal jurisdiction. The Receiver, in this action, sues Defendants, each of whom or which received money transfers from the subject fraudulent scheme, which is a well-recognized use of the ancillary jurisdiction of the federal courts. *See e.g., Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (finding federal ancillary jurisdiction over state law fraudulent transfer claims in an action by a receiver against transferees in a Ponzi scheme case); *see also* 28 U.S.C. § 1331.

16. The Court also has personal jurisdiction over Defendants because Defendants conducted business with, and/or received funds or transfers of assets from the Receivership Entities, which were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Defendants received from Receivership Entities were proceeds from Receivership Entities' fraudulent scheme conducted from the Southern District of Florida.

17. The Court also has personal jurisdiction over Defendants because they regularly conduct business in the state of Florida, solicited funds from the Receivership Entities in the state of Florida, and/or transacted business with the Receivership Entities in this District. In doing so, each Defendant purposefully

directed its activities to the state and availed itself of the privileges of conducting activities in the state.

18. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 754 and 1692, because this action is brought to accomplish the objectives of the Appointment Orders and is ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

19. All conditions precedent to the bringing of this action have been performed, waived, satisfied, or have otherwise occurred.

## RECEIVER'S STANDING

20. The Receiver has standing to bring the claims asserted in this Complaint pursuant to the SRO. SRO at ¶ 30(h). The SRO authorizes and empowers the Receiver to:

> Initiate . . . or become a party to any actions or proceedings . . . that the Temporary Receiver deems necessary and advisable to preserve the value of the Receivership or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order

*Id*. Included among such actions are fraudulent transfer and unjust enrichment actions to recover for the benefit of the Estate amounts that the Receivership Entities fraudulently transferred to and/or unjustly enriched third parties.

21. The Receiver as a "creditor," and on behalf of the "creditors," of the Receivership Entities, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act ("FUFTA"),

section 726.101, Florida Statutes *et seq*. and common law unjust enrichment (pled in the alternative to the fraudulent transfer claims).

22. The Receiver also has standing to bring the fraudulent transfer and unjust enrichment claims on behalf of the Receivership Entities as a creditor of pre-receivership Receivership Entities seeking to redress the wrongs committed to the Receivership Entities by its management in making the fraudulent transfers and unjust payments to and for the benefit of Defendants. *See Wiand v. Lee*, 753 F. 3d 1194, 1202 (11th Cir. 2014).

23. Finally, the Receiver has standing to bring this action pursuant to 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]" As set forth above, the Receiver has complied with the requirements set forth in 28 U.S.C. §§ 754 and 1692.

## LIMITATIONS PERIOD AND APPLICABLE LAW

24. This action is brought within the pertinent statutory limitations period. Section 726.110, Florida Statutes provides a four-year period to seek to avoid and recover transfers from the date the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.

25. The Receiver was appointed receiver over Block Consulting, MAS Capital, Alpha Trader, POE, Centurion TS, GMJ Marketing, Go Long, Nutrition Zone, Intelligenza, and JVL Consulting, on March 13, 2026.

26. And the Receiver was appointed Receiver over MTT9, SAEG, SECAP, and SACAP on March 30, 2026.

27. Upon his appointment, the Receiver immediately began collecting financial documents including bank statements, wire transfer details, cancelled checks and business records for the Receivership Entities. Many of the documents were obtained by subpoena from the Receivership Entities' various banks. The Receiver promptly forwarded those documents to his forensic accountants who conducted a forensic accounting analysis of the transfers that the Receivership Entities made to third parties. The Receiver obtained and reviewed that forensic analysis and gained knowledge of Receivership Entities' transfers to third parties therefrom.

28. The Receiver did not and could not have discovered the facts constituting the Receivership Entities' misconduct and the Transfers detailed below until after his appointment as Receiver over the Receivership Entities.

29. The Receiver also seeks to avoid and recover fraudulent transfers under sections 726.105(1)(b) and 726.106, Florida Statutes, which were made to Defendants within (a) one year after the transfer was or could have been reasonably discovered by the Receiver, and/or (b) the four-year period prior to the date upon which the Receiver filed this Complaint.

30. The Receiver also seeks damages for unjust enrichment under Florida common law for the transfers made to Defendants.

## FACTUAL ALLEGATIONS

### The Traders Domain Fraudulent Scheme

31. Traders Domain FX LTD. d/b/a The Traders Domain is a company with its principal operations in Canada. Fredirick Teddy Joseph Safranko a/ka Ted Safranko and David William Negus-Romvari were the control persons of Traders Domain FX LTD.

32. From at least November 2019 to October 2024 (the "Relevant Period"), Traders Domain FX LTD fraudulently solicited at least 2,046 U.S. customers to deposit at least $283 million for the purpose of pooled trading of leveraged or margined gold-to-U.S. dollar pair ("XAU/USD") transactions (the "TD Pool").

33. Traders Domain FX LTD solicited customers directly and by engaging other individuals and entities ("Sponsors") to solicit customers on its behalf in exchange for commissions equivalent to a percentage, sometimes as high as 50%, of customers' purported trading profits.

34. During the relevant period, Traders Domain FX LTD made false statements and fraudulent misrepresentations to prospective customers regarding its trading operations and the ability of customers to withdraw their funds. Traders Domain FX LTD misled customers into believing that all their deposited funds were being invested in XAU/USD when in fact customer funds were being misappropriated and used for other purposes.

35. To conceal their fraud, Traders Domain FX LTD falsified trading records by manipulating customer trading data such that the daily trading results snapshots sent to customers were nearly always positive. Traders Domain FX LTD also manipulated trading data to eliminate purported trading losses. And, when customers observed trading losses in their accounts and raised their concerns, Traders Domain FX LTD falsely claimed (directly or through Sponsors) that such losses were "system errors" or the result of "slippage."

36. When Traders Domain FX LTD began experiencing "liquidity problems" in August 2022, Traders Domain FX LTD lied to customers about the purported reasons for delayed withdrawals and made false assurances that withdrawals would eventually be processed. Indeed, Traders Domain FX LTD lacked the funds to repay its customers because such funds had been misappropriated and not traded as purported, and the Traders Domain FX LTD fraudulent scheme was on the brink of collapse.

37. Traders Domain FX LTD misappropriated customer funds by directing customers to deposit funds into third-party bank accounts which were not controlled by Traders Domain FX LTD or to payment processors contracted by Traders Domain FX LTD who acted at the direction of Traders Domain FX LTD. Traders Domain FX LTD also failed to use at least some customer funds to trade XAU/USD and charged commissions on purported trading profits that did not exist. Traders Domain FX LTD also misappropriated customer funds by failing to return customer funds despite

repeated attempts by thousands of customers to access and/or liquidate their accounts.

38. Traders Domain FX LTD also misappropriated customer funds by using new customer deposits to make Ponzi-style payments to fund pending withdrawals for certain customers.

## The Sponsor Fraudulent Schemes

### Algo Capital

39. Algo Capital, LLC ("Algo") and Algo FX Capital Advisor, LLC n/k/a Quant5 Advisor, LLC ("Algo FX") operated from their principal places of business in Miami, Florida.

40. Robert Collazo, Jr. was the President of Algo and manager and owner of Algo FX. Juan "JJ" Herman was the Vice President of Algo and a manager and owner of Algo FX. At all material times, Collazo and Herman were controlling persons of Algo and Algo FX.

41. At all material times, Collazo additionally owned and controlled Block Consulting, and Herman owned and controlled Intelligenza and Nutrition Zone, all of which operated from principal places of business in Miami, Florida.

42. John Fortini was the Vice President and CFO Portfolio Management of Algo and Algo FX. Fortini additionally owned and controlled JVL Consulting, which operated from a principal place of business in Miami, Florida.

43. From at least November 2019 to October 2024 (the "Relevant Algo Period"),[1] the Algo stakeholders made false and misleading statements to current and prospective customers regarding Algo's trading operations, how customer funds were being utilized, and where customer funds were located. And, Algo stakeholders misappropriated and commingled customer funds.

44. Algo was a Traders Domain Sponsor and fraudulently solicited at least $39 million from at least 242 customers for the purposes of trading leveraged or margined XAU/USD by making material misrepresentations and omissions to prospective and actual investors.

45. During the Relevant Algo Period, Algo stakeholders executed agreements with customers providing licenses to use Algo's "proprietary algorithmic trading software" in exchange for up to 50% of customer trading profits; however, Algo was operating as a fraudulent scheme, and Algo stopped using its own proprietary algorithm and directed customer funds to Traders Domain.

46. And, in some instances, instead of sending customer funds to Traders Domain, they directed customers to deposit funds into bank accounts controlled by Collazo and Herman using certain of the funds for personal and non-trading related purposes.

47. Algo stakeholders fraudulently misled customers into believing that Algo had control of their funds when, in some instances, Traders Domain did. Algo

[1] While the CFTC's Complaint concerns the period of October 2021 through October 2024, the Receiver's investigation reflects that Algo was operating as a Ponzi scheme and/or other fraudulent scheme from as early as November 2019.

customers were directed to submit withdrawal requests directly to Algo, and Algo, in turn, submitted withdrawal requests to Traders Domain without copying or notifying its customers. Traders Domain failed to return funds, and by January 2023, the backlog of outstanding Algo customer withdrawal requests amounted to approximately $27 million.

48. During the Relevant Algo Period, Algo customers deposited no less than $32 million into the accounts controlled by Collazo and Herman, but most customer withdrawals could not be paid because Algo, Collazo, and Herman used most of the funds to pay themselves and to make Ponzi-style payments to certain customers.

<u>The Centurion and Santi Fraudulent Scheme</u>

49. Centurion Capital Group, Inc. ("Centurion Capital") operated from a principal place of business in Hialeah Gardens, Florida.

50. Alejandro Santiesteban a/k/a Alex Santi owns Centurion Holdings, LLC, which is the designated President of Centurion Capital. Gabriel Beltran owns GMJ Marketing, LLC, which is the designated Vice President of Centurion Capital. At all material times, Santi and Beltran were owners and controlling persons of Centurion Capital.

51. Archie Rice was a representative of Centurion Capital and solicited customers on behalf of Centurion Capital. At all material times, Rice owned and controlled Go Long Investments, LLC.

52. At all material times, Santi additionally owned and controlled Alpha Trader Firm, LLC ("Alpha Trader"), Centurion TS Holdings, LLC ("Centurion TS"),

and Profit Over Everything, Inc. ("POE"), all of which operated from a principal place of business in Miami, Florida. Alpha Trader, Centurion TS, POE, and Centurion Capital are collectively hereinafter referred to as the "Centurion Entities."

53. From at least March 2022 to October 2024, Centurion Capital was a Traders Domain Sponsor and fraudulently solicited at least $8.4 million from at least 47 customers for the purported purposes of trading leveraged or margined XAU/USD by making material misrepresentations and omissions to prospective and actual customers.

54. Santi and/or the Centurion Entities fraudulently solicited customers by making false and misleading statements to prospective customers regarding Centurion's trading operations, alleged profits, how customer funds were being utilized, and where customer funds were located.

55. Santi and/or the Centurion Entities misled customers into believing that Centurion Capital Group's "Hedge Fund" controlled customer funds but, rather than holding such funds in a Centurion Capital Group account as they represented, Centurion Capital Group used the funds for their own purposes and/or to participate in the TD Pool, which itself was a Ponzi scheme.

56. Santi and/or the Centurion Entities frequently made misrepresentations and false assurances to customers about their ability to withdraw their funds. No later than August 2022, Santi and/or the Centurion Entities learned that Traders Domain would not be able to process withdrawal requests, but he chose

not to share this information with current customers along with new customers they solicited after such time.

57. Santi and/or the Centurion Entities also misappropriated and commingled customer funds by accepting funds in accounts controlled by them, including accounts of the Centurion Entities, and using such funds to pay themselves and make Ponzi-style payments to certain customers.

58. As a result of the fraudulent conduct outlined above, the CFTC commenced the CFTC Action against, among other individuals and entities, Santi and Centurion Capital Group, which resulted in the entry of a preliminary finding that Santi and Centurion Capital Group likely participated in a fraudulent commodities scheme. *See* SRO.

59. As a result of operating a Ponzi scheme, Santi and/or the Centurion Entities were insolvent. At all relevant times, Santi and/or the Centurion Entities did not have sufficient assets to pay debts owed to customers and creditors as those debts became due.

Michael Sims

60. Michael Shannon Sims is a Florida resident who owns and operates numerous companies related to investing and trading, including MAS Capital.

61. From at least September 2021 to October 2024 (the "Relevant Sims Period"), Sims was a Traders Domain Sponsor and fraudulently solicited at least $22 million from at least 42 customers for the purposes of trading leveraged or margined

XAU/USD by making material misrepresentations and omissions to prospective and actual customers.

62. During the Relevant Sims Period, Sims falsely claimed to prospective and current customers that he was collecting money for his "hedge fund." Sims claimed that his hedge fund had been in operation for over 10 years and employed a team of experienced traders to trade on behalf of customers; however, no such hedge fund ever existed, and Sims was in fact recruiting customers for the TD Pool.

63. Sims made false and misleading statements to current and prospective customers regarding the profit and risk associated with trading, the structure of the trading operation, and the ability of customers to withdraw funds. To entice prospective customers, Sims falsely claimed that his nonexistent hedge fund was profitable every month and generated profits up to 40%.

64. Sims made misrepresentations and false assurances to customers regarding their ability to withdraw their funds. When customers inquired regarding withdrawal requests that were pending for months, Sims falsely assured customers that the withdrawals would be processed.

65. Sims knew or should have known that Traders Domain was engaged in illegal and/or fraudulent activity, but he ignored all such indications and failed to disclose such information to current and prospective customers.

66. Sims misappropriated customer funds by taking 40-50% commissions on false trading profits. Sims also directed customers to deposit funds into accounts

controlled by third-party entities, including MAS Capital, to be used for purposes not disclosed to or agreed to by the investors.

67. As a result of the fraudulent conduct outlined above, the CFTC commenced the CFTC Action against, among other individuals and entities, Collazo, Sims, and Algo, which resulted in the entry of preliminary findings that Collazo, Sims, and Algo likely participated in a fraudulent commodities scheme. *See* SRO.

68. As a result of operating a Ponzi scheme, the Receivership Entities were insolvent, undercapitalized, and operating at a loss. During all relevant times, the Receivership Entities did not have sufficient assets to pay their debts to customers and creditors as those debts became due.

<u>The Involvement of MTT9, SAEG, SECAP, and SACAP in the TD Scheme</u>

69. The Traders Domain fraudulent scheme was facilitated by various non-Sponsor third-party entities that were organized and controlled by Tin Quoc Tran, including, among other entities, MTT9, SAEG, SECAP, and SACAP.

70. Traders Domain customers were directed to deposit funds into the MTT9, SAEG, SECAP, and SACAP bank accounts, which were owned and controlled by Tran (the "Tran Bank Accounts"), for purposes of investing into the TD Pool.

71. During the Relevant Period, customers transferred no less than $130 million to the Tran Bank Accounts. None of these funds were ever used for legitimate trading purposes, rather, the Receivership Entities misappropriated such funds for their own benefit.

## Transfers to Defendants

***CF Preferred, LLC***

72. Defendant, CF Preferred, LLC, is a limited liability company in the State of Illinois.

73. During the Relevant Period, CF Preferred, LLC sent the total amount of $1,629,144.70 to the Receivership Entities, and the Receivership Entities sent the total amount of $11,778,000.00 to CF Preferred, LLC, for a total net gain to CF Preferred, LLC of $10,148,855.30 (collectively, the "CF Preferred, LLC Transfers"). *See* Schedule of CF Preferred, LLC Transfers, attached as **Exhibit 2**.

***Juan A. Hernandez, Lizette Hernandez, Vosh & Associates, Inc., and Little Black Book Enterprises, LLC***

74. Defendant, Juan A. Hernandez, is a citizen of the State of Florida.

75. Defendant, Lizette Hernandez, is a citizen of the State of Florida.

76. Defendant, Vosh & Associates, Inc., is a corporation in the State of Florida.

77. Defendant, Little Black Book Enterprises, LLC, is a limited liability company in the State of Florida.

78. During the Relevant Period, Juan A. Hernandez, Lizette Hernandez, Vosh & Associates, and Little Black Book Enterprises, LLC (collectively, the "Hernandez Parties") sent the total amount of $22,410.37 to the Receivership Entities, and the Receivership Entities sent the total amount of $7,691,871.99 to the Hernandez Parties, for a total net gain to the Hernandez Parties of $7,669,461.62

(collectively, the "Hernandez Parties Transfers"). *See* Schedule of Hernandez Parties Transfers, attached as **Exhibit 3.**

***GPD OTC, LLC***

79. Defendant, GPD OTC, LLC, is a limited liability company in the State of Illinois.

80. During the Relevant Period, GPD OTC, LLC, sent the total amount of $603,507.19 to the Receivership Entities, and the Receivership Entities sent the total amount of $3,126,585.61 to GPD OTC, LLC for a total net gain to GPD OTC, LLC of $2,523,078.42 (collectively, the "GPD OTC, LLC Transfers"). *See* Schedule of GPD OTC, LLC Transfers, attached as **Exhibit 4**.

***Wealth Connection Global, LLC and Stormy Wellington***

81. Defendant, Wealth Connection Global, LLC, is a limited liability company in the State of Florida managed by Stormy Wellington.

82. Defendant, Stormy Wellington, is a citizen of the State of Florida.

83. During the Relevant Period, Wealth Connection Global, LLC and Stormy Wellington (collectively, the "Wellington Parties") sent the total amount of $1,070,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $3,584,875.68 to the Wellington Parties for a total net gain to the Wellington Parties of $2,514,875.68 (collectively, the "Wellington Parties Transfers"). *See* Schedule of Wellington Parties Transfers, attached as **Exhibit 5**.

***HIM 500, LLC***

84. Defendant, HIM 500, LLC, is a limited liability company in the State of Florida.

85. During the Relevant Period, HIM 500, LLC, sent the total amount of $350,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $ 2,300,000.00 to HIM 500, LLC for a total net gain to HIM 500, LLC of $ 1,950,000.00 (collectively, the "HIM 500, LLC Transfers"). *See* Schedule of HIM 500, LLC Transfers, attached as **Exhibit 6**.

***D&K Investment Holdings, LLC***

86. Defendant, D&K Investment Holdings, is a limited liability company in the State of Georgia.

87. During the Relevant Period, the Receivership Entities sent the total amount of $1,880,000.00 to D&K Investment Holdings for a total net gain to D&K Investment Holdings, of $1,880,000.00 (collectively, the "D&K Investment Holdings Transfers"). *See* Schedule of D&K Investment Holdings Transfers, attached as **Exhibit 7**.

***Investment Partners, LLC, Fabian Guerra, and Gabriela C. Giralt***

88. Defendant, Investment Partners, LLC, is a limited liability company in the State of Florida.

89. Defendant, Fabian Guerra, is a citizen of the State of Florida.

90. Defendant, Gabriela C. Giralt, is a citizen of the State of Florida.

91. During the Relevant Period, the Receivership Entities sent the total amount of $60,306.00 to Investment Partners, LLC, Fabian Guerra, and Gabriela C. Giralt (collectively, the "Guerra Parties") for a total net gain to Investment Partners, LLC and affiliates Fabian Guerra and Gabriela C. Giralt of $ 1,475,306.00 (collectively, the "Guerra Parties Transfers"). *See* Schedule of Guerra Parties Transfers, attached as **Exhibit 8**.

***Kenneth Blount***

92. Defendant, Kenneth Blount, is a citizen of the State of Florida.

93. During the Relevant Period, the Receivership Entities sent the total amount of $1,173,694.00 to Kenneth Blount for a total net gain to Kenneth Blount of $1,173,694.00 (collectively, the "Kenneth Blount Transfers"). *See* Schedule of Kenneth Blount Transfers, attached as **Exhibit 9**.

***Schneider Enterprise Resources, LLC***

94. Defendant, Schneider Enterprise Resources, LLC, is a limited liability company in the State of Wisconsin.

95. During the Relevant Period, the Receivership Entities sent the total amount of $1,075,500.00 to Schneider Enterprise Resources, LLC for a total net gain to Schneider Enterprise Resources, LLC of $1,075,500.00 (collectively, the "Schneider Enterprise Resources, LLC Transfers"). *See* Schedule of Schneider Enterprise Resources, LLC Transfers, attached as **Exhibit 10**.

***Waterfall Holding, Inc.***

96. Defendant, Waterfall Holding, Inc, is a corporation in the State of Nevada.

97. During the Relevant Period, the Receivership Entities sent the total amount of $1,000,000.00 to Waterfall Holding, Inc. for a total net gain to Waterfall Holding, Inc. of $1,000,000.00 (collectively, the "Waterfall Holding, Inc. Transfers"). *See* Schedule of Waterfall Holding, Inc. Transfers, attached as **Exhibit 11**.

***Real Hasta La Muerte, LLC***

98. Defendant, Real Hasta La Muerte, LLC, is a limited liability company in the State of Florida.

99. During the Relevant Period, Real Hasta La Muerte, LLC sent the total amount of $1,000,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $1,961,780.00 to Real Hasta La Muerte, LLC for a total net gain to Real Hasta La Muerte, LLC of $961,780.00 (collectively, the "Real Hasta La Muerte, LLC Transfers"). *See* Schedule of Real Hasta La Muerte, LLC Transfers, attached as **Exhibit 12**.

***Peter B. Gross***

100. Defendant, Peter B. Gross, is a citizen of the State of Florida.

101. During the Relevant Period, Peter B. Gross sent the total amount of $50,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $705,158.00 to Peter B. Gross for a total net gain to Peter B. Gross of

$655,158.00 (collectively, the "Peter B. Gross Transfers"). *See* Schedule of Peter B. Gross Transfers, attached as **Exhibit 13**.

***NDE Holdings, LLC***

102. Defendant, NDE Holdings, LLC, is a limited liability company in the State of Georgia.

103. During the Relevant Period, the Receivership Entities sent the total amount of $600,000.00 to NDE Holdings, LLC for a total net gain to NDE Holdings, LLC of $600,000.00 (collectively, the "NDE Holdings, LLC Transfers"). *See* Schedule of NDE Holdings, LLC Transfers, attached as **Exhibit 14**.

***Amaury Lendeborg and Doris M. Liriano***

104. Defendant, Amaury Lendeborg, is a citizen of the State of Florida.

105. Defendant, Doris M. Liriano, is a citizen of the State of Florida.

106. During the Relevant Period, Amaury Lendeborg and Doris M. Liriano (collectively, the "Lendeborg Parties") sent the total amount of $177,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $753,430.00 to the Lendeborg Parties for a total net gain to the Lendeborg Parties of $576,430.00.00 (collectively, the "Lendeborg Parties Transfers"). *See* Schedule of Amaury Lendeborg and Doris M. Liriano Transfers, attached as **Exhibit 15**.

***DTM Group, LLC***

107. Defendant, DTM Group, LLC, is a limited liability company in the State of Nevada.

108. During the Relevant Period, the Receivership Entities sent the total amount of $571,000.00 to DTM Group, LLC for a total net gain to DTM Group, LLC of $571,000.00 (collectively, the "DTM Group, LLC Transfers"). *See* Schedule of DTM Group, LLC Transfers, attached as **Exhibit 16**.

***Rozell Sims***

109. Defendant, Rozell Sims, is a citizen of the State of Alabama.

110. During the Relevant Period, the Receivership Entities sent the total amount of $568,000.00 to Rozell Sims for a total net gain to Rozell Sims of $568,000.00 (collectively, the "Rozell Sims Transfers"). *See* Schedule of Rozell Sims Transfers, attached as **Exhibit 17**.

***RR Elite, LLC and Robert Rodriguez***

111. Defendant, RR Elite, LLC, is a limited liability company in the State of Florida.

112. Defendant, Robert Rodriguez, is a citizen of the State of Florida.

113. During the Relevant Period, RR Elite, LLC and Robert Rodriguez (collectively, the "Rodriguez Parties") sent the total amount of $420,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $980,269.00 to the Rodriguez Parties for a total net gain to the Rodriguez Parties of $560,269.00 (collectively, the "Rodriguez Parties Transfers"). *See* Schedule of RR Elite, LLC and Robert Rodriguez Transfers, attached as **Exhibit 18**.

***John Hopkins***

114. Defendant, John Hopkins, is a citizen of the State of North Carolina.

115. During the Relevant Period, the Receivership Entities sent the total amount of $550,000.00 to John Hopkins for a total net gain to John Hopkins of $550,000.00 (collectively, the "John Hopkins Transfers"). *See* Schedule of John Hopkins Transfers, attached as **Exhibit 19**.

***TDH Properties Limited Partner***

116. Defendant, TDH Properties Limited Partner, is a limited partnership in the State of Florida.

117. During the Relevant Period, TDH Properties Limited Partner sent the total amount of $100,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $650,000.00 to TDH Properties Limited Partner for a total net gain to TDH Properties Limited Partner of $550,000.00 (collectively, the "TDH Properties Limited Partner Transfers"). *See* Schedule of TDH Properties Limited Partner Transfers, attached as **Exhibit 20**.

***Olalla Ranch, LLC***

118. Defendant, Olalla Ranch LLC, is a limited liability company in the State of Louisiana.

119. During the Relevant Period, the Receivership Entities sent the total amount of $600,000.00 to Olalla Ranch, LLC for a total net gain to Olalla Ranch, LLC of $600,000.00 (collectively, the "Olalla Ranch, LLC Transfers"). *See* Schedule of Olalla Ranch, LLC Transfers, attached as **Exhibit 21**.

***Jace Investment Group, Inc.***

120. Defendant, Jace Investment Group Inc., is a corporation in the State of Florida.

121. During the Relevant Period, Jace Investment Group, Inc. sent the total amount of $140,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $662,820.00 to Jace Investment Group, Inc. for a total net gain to Jace Investment Group, Inc. of $522,820.00 (collectively, the "Jace Investment Group, Inc. Transfers"). *See* Schedule of Jace Investment Group, Inc. Transfers, attached as **Exhibit 22**.

***Said Daibes Figueroa***

122. Defendant, Said Daibes Figueroa, is a citizen of the State of Maryland.

123. During the Relevant Period, Said Daibes Figueroa sent the total amount of $35,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $517,857.85 to Said Daibes Figueroa for a total net gain to Said Daibes Figueroa of $482,857.85 (collectively, the "Said Daibes Figueroa Transfers"). *See* Schedule of Said Daibes Figueroa Transfers, attached as **Exhibit 23.**

***Sharon B. Beck***

124. Defendant, Sharon B. Beck, is a citizen of the State of Florida.

125. During the Relevant Period, Sharon B. Beck sent the total amount of $80,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $552,000.00 to Sharon B. Beck for a total net gain to Sharon B. Beck of

$472,000.00 (collectively, the "Sharon B. Beck Transfers"). *See* Schedule of Sharon B. Beck Transfers, attached as **Exhibit 24**.

***Juan Carlos German***

126. Defendant, Juan Carlos German, is a citizen of the State of Georgia.

127. During the Relevant Period, the Receivership Entities sent the total amount of $465,000.00 to Juan Carlos German for a total net gain to Juan Carlos German of $465,000.00 (collectively, the "Juan Carlos German Transfers"). *See* Schedule of Juan Carlos German Transfers, attached as **Exhibit 25**.

***NV Las Vegas Sunrise, LLC***

128. Defendant, NV Las Vegas Sunrise, LLC, is a limited liability company in the State of Nevada.

129. During the Relevant Period, the Receivership Entities sent the total amount of $456,446.00 to NV Las Vegas Sunrise, LLC for a total net gain to NV Las Vegas Sunrise, LLC of $456,446.00 (collectively, the "NV Las Vegas Sunrise, LLC Transfers"). *See* Schedule of NV Las Vegas Sunrise, LLC Transfers, attached as **Exhibit 26**.

***Novus Radar Technology***

130. Defendant, Novus Radar Technology, is a company in the State of California.

131. During the Relevant Period, the Receivership Entities sent the total amount of $439,000.00 to Novus Radar Technology for a total net gain to Novus Radar

Technology of $439,000.00 (collectively, the "Novus Radar Technology Transfers"). *See* Schedule of Novus Radar Technology Transfers, attached as **Exhibit 27**.

***Ramon G. Fernandez, P.A.***

132. Defendant, Ramon G. Fernandez, P.A., is a professional association registered in the State of Florida.

133. During the Relevant Period, Ramon G. Fernandez, P.A. sent the total amount of $220,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $657,500.00 to Ramon G. Fernandez, P.A. for a total net gain to Ramon G. Fernandez, P.A. of $437,500.00 (collectively, the "Ramon G. Fernandez, P.A. Transfers"). *See* Schedule of Ramon G. Fernandez, P.A. Transfers, attached as **Exhibit 28**.

***Sams Management, LLC***

134. Defendant, Sams Management, LLC, is a limited liability company in the State of Florida.

135. During the Relevant Period, Sams Management, LLC sent the total amount of $0 to the Receivership Entities, and the Receivership Entities sent the total amount of $434,755.00 to Sams Management, LLC for a total net gain to Sams Management, LLC of $434,755.00 (collectively, the "Sams Management, LLC Transfers"). *See* Schedule of Sams Management, LLC, Transfers, attached as **Exhibit 29**.

***Jason K. Lobdell***

136. Defendant, Jason K. Lobdell, is a citizen of the State of Georgia.

137. During the Relevant Period, Jason K. Lobdell sent the total amount of $100,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $530,000.00 to Jason K. Lobdell for a total net gain to Jason K. Lobdell of $430,000.00 (collectively, the "Jason K. Lobdell Transfers"). *See* Schedule of Jason K. Lobdell Transfers, attached as **Exhibit 30**.

***Boba Tree, LLC***

138. Defendant, Boba Tree, LLC, is a limited liability company in the State of Florida.

139. During the Relevant Period, the Receivership Entities sent the total amount of $429,500.00 to Boba Tree, LLC for a total net gain to Boba Tree, LLC of $429,500.00 (collectively, the "Boba Tree, LLC Transfers"). *See* Schedule of Boba Tree, LLC Transfers, attached as **Exhibit 31**.

***Leigha Brisco***

140. Defendant, Leigha Brisco, is a citizen of the State of Florida.

141. During the Relevant Period, Leigh Brisco sent the total amount of $63,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $369,531.00 to Leigh Brisco for a total net gain to Leigh Brisco of $306,531.00 (collectively, the "Leigh Brisco Transfers"). *See* Schedule of Leigh Brisco Transfers, attached as **Exhibit 32**.

***David Shands, LLC***

142. Defendant, David Shands, LLC, is a limited liability company in the State of Georgia.

143. During the Relevant Period, David Shands, LLC sent the total amount of $200,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $600,000.00 to David Shands, LLC for a total net gain to David Shands, LLC of $400,000.00 (collectively, the "David Shands, LLC Transfers"). *See* Schedule of David Shands, LLC Transfers, attached as **Exhibit 33**.

***Jacob Morayniss***

144. Defendant, Jacob Morayniss, is a citizen of the State of California.

145. During the Relevant Period, the Receivership Entities sent the total amount of $400,000.00 to Jacob Morayniss for a total net gain to Jacob Morayniss of $400,000.00 (collectively, the "Jacob Morayniss Transfers"). *See* Schedule of Jacob Morayniss Transfers, attached as **Exhibit 34**.

***Antonio Gates, LLC***

146. Defendant, Antonio Gates, LLC, is a limited liability company in the State of Michigan.

147. During the Relevant Period, the Receivership Entities sent the total amount of $399,716.00 to Antonio Gates, LLC for a total net gain to Antonio Gates, LLC of $399,716.00 (collectively, the "Antonio Gates, LLC Transfers"). *See* Schedule of Antonio Gates, LLC Transfers, attached as **Exhibit 35.**

***Alejandro Imar Calderin***

148. Defendant, Alejandro Imar Calderin, is a citizen of the State of Florida.

149. During the Relevant Period, Alejandro Imar Calderin sent the total amount of $65,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $471,896.63 to Alejandro Imar Calderin for a total net gain to Alejandro Imar Calderin of $406,896.63 (collectively, the "Alejandro Imar Calderin Transfers"). *See* Schedule of Alejandro Imar Calderin Transfers, attached as **Exhibit 36**.

***Brandon Sims***

150. Defendant, Brandon Sims, is a citizen of the State of Georgia.

151. During the Relevant Period, Brandon Sims sent the total amount of $47,453.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $397,342.00 to Brandon Sims for a total net gain to Brandon Sims of $349,889.00 (collectively, the "Brandon Sims Transfers"). *See* Schedule of Brandon Sims Transfers, attached as **Exhibit 37**.

***Full Send Investments, LLC***

152. Defendant, Full Send Investments, LLC, is a limited liability company in the State of Florida.

153. During the Relevant Period, Full Send Investments, LLC sent the total amount of $120,176.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $459,646.96 to Full Send Investments, LLC for a total net gain to Full Send Investments, LLC of $339,470.96 (collectively, the "Full Send

Investments, LLC Transfers"). *See* Schedule of Full Send Investments, LLC Transfers, attached as **Exhibit 38**.

***Day Trading Lab, LLC***

154. Defendant, Day Trading Lab LLC, is a limited liability company in the State of Florida.

155. During the Relevant Period, the Receivership Entities sent the total amount of $329,500.00 to Day Trading Lab, LLC for a total net gain to Day Trading Lab, LLC of $329,500.00 (collectively, the "Day Trading Lab, LLC Transfers"). *See* Schedule of Day Trading Lab, LLC Transfers, attached as **Exhibit 39**.

***Loretta Dow Freyhof***

156. Defendant, Loretta Dow Freyhof, is a citizen of the State of Florida.

157. During the Relevant Period, Loretta Dow Freyhof sent the total amount of $50,930.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $364,706.00 to Loretta Dow Freyhof for a total net gain to Loretta Dow Freyhof of $313,776.00 (collectively, the "Loretta Dow Freyhof Transfers"). *See* Schedule of Loretta Dow Freyhof Transfers, attached as **Exhibit 40**.

***Kos Partners, LLC***

158. Defendant, Kos Partners, LLC, is a limited liability company in the State of Nevada.

159. During the Relevant Period, Kos Partners, LLC sent the total amount of $ 0 to the Receivership Entities, and the Receivership Entities sent the total amount of $303,395.31 to Kos Partners, LLC for a total net gain to Kos Partners, LLC

of $303,395.31 (collectively, the "Kos Partners, LLC Transfers"). *See* Schedule of Kos Partners, LLC Transfers, attached as **Exhibit 41**.

***L&N Group Holdings, LLC***

160. Defendant, L&N Group Holdings, LLC, is a limited liability company in the State of New York.

161. During the Relevant Period, the Receivership Entities sent the total amount of $300,000.00 to L&N Group Holdings, LLC for a total net gain to L&N Group Holdings, LLC of $300,000.00 (collectively, the "L&N Group Holdings, LLC Transfers"). *See* Schedule of L&N Group Holdings, LLC Transfers, attached as **Exhibit 42**.

***The Finer Things, LLC***

162. Defendant, The Finer Things, LLC, is a limited liability company in the State of Delaware.

163. During the Relevant Period, the Receivership Entities sent the total amount of $300,000.00 to Finer Things, LLC for a total net gain to Finer Things, LLC of $300,000.00 (collectively, the "Finer Things, LLC Transfers"). *See* Schedule of Finer Things, LLC Transfers, attached as **Exhibit 43**.

***Richard S. Lagrand Jr.***

164. Defendant, Richard S. Lagrand Jr., is a citizen of the State of Alabama.

165. During the Relevant Period, Richard S. Lagrand Jr. sent the total amount of $70,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $349,500.00 to Richard S. Lagrand Jr. for a total net gain to

Richard S. Lagrand Jr. of $279,500.00 (collectively, the "Richard S. Lagrand Jr. Transfers"). *See* Schedule of Richard S. Lagrand Jr. Transfers, attached as **Exhibit 44**.

***TMD Shops, LLC***

166. Defendant, TMD Shops, LLC, is a limited liability company in the State of California.

167. During the Relevant Period, TMD Shops, LLC sent the total amount of $100,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $370,000.00 to TMD Shops, LLC for a total net gain to TMD Shops, LLC of $270,000.00 (collectively, the "TMD Shops, LLC Transfers"). *See* Schedule of TMD Shops, LLC Transfers, attached as **Exhibit 45**.

***Stuntgang, LLC***

168. Defendant, Stuntgang, LLC, is a limited liability company in the State of New Jersey.

169. During the Relevant Period, Stuntgang, LLC sent the total amount of $150,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $403,977.11 to Stuntgang, LLC for a total net gain to Stuntgang, LLC of $253,977.11 (collectively, the "Stuntgang, LLC Transfers"). *See* Schedule of Stuntgang, LLC Transfers, attached as **Exhibit 46**.

***Davis Bowe Enterprises, LLC and Angela Ramson***

170. Defendant, Davis Bowe Enterprises, LLC, is a limited liability company in the State of Georgia.

171. Defendant, Angela Ramson, is a citizen of the State of Georgia.

172. During the Relevant Period, Davis Bowe Enterprises, LLC and Angela Ramson (collectively, the "Ramson Parties") sent the total amount of $190,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $250,023.00 to the Ramson Parties for a total net gain to the Ramson Parties of $60,023.00 (collectively, the "Ramson Parties Transfers"). *See* Schedule of Ramson Parties Transfers, attached as **Exhibit 47**.

***Blacksite Ranch, LLC***

173. Defendant, Blacksite Ranch, LLC, is a limited liability company in the State of California.

174. During the Relevant Period, Blacksite Ranch, LLC sent the total amount of $2,000,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $2,250,000.00 to Blacksite Ranch, LLC for a total net gain to Blacksite Ranch, LLC of $250,000.00 (collectively, the "Blacksite Ranch, LLC Transfers"). *See* Schedule of Blacksite Ranch, LLC Transfers, attached as **Exhibit 48**.

***Mena Millions, Inc.***

175. Defendant, Mena Millions, Inc., is a corporation in the State of Georgia.

176. During the Relevant Period, the Receivership Entities sent the total amount of $250,000.00 to Mena Millions, Inc. for a total net gain to Mena Millions, Inc. of $250,000.00 (collectively, the "Mena Millions, Inc. Transfers"). *See* Schedule of Mena Millions, Inc. Transfers, attached as **Exhibit 49**.

***Sinetix, LLC***

177. Defendant, Sinetix, LLC, is a limited liability company in the State of Nevada.

178. During the Relevant Period, the Receivership Entities sent the total amount of $250,000.00 to Sinetix, LLC for a total net gain to Sinetix, LLC of $250,000.00 (collectively, the "Sinetix, LLC Transfers"). *See* Schedule of Sinetix, LLC Transfers, attached as **Exhibit 50**.

***Darnell Self and Self Defined, Inc.***

179. Defendant, Darnell Self, is a citizen of the State of Maryland.

180. Defendant, Self Defined, Inc., is a corporation in the State of Maryland.

181. During the Relevant Period, Darnell Self and Self Defined, Inc. (collectively, the "Self Parties") sent the total amount of $50,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $290,000.00 to the Self Parties for a total net gain to the Self Parties of $240,000.00 (collectively, the "Self Parties Transfers"). *See* Schedule of Self Parties Transfers, attached as **Exhibit 51**.

***Heather H. Gross***

182. Defendant, Heather H. Gross, is a citizen of the State of Alabama.

183. During the Relevant Period, Heather H. Gross sent the total amount of $60,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $300,000.00 to Heather H. Gross for a total net gain to Heather H. Gross

of $240,000.00 (collectively, the "Heather H. Gross Transfers"). *See* Schedule of Heather H. Gross Transfers, attached as **Exhibit 52**.

***Patrice McKinney***

184. Defendant, Patrice McKinney, is a citizen of the State of Alabama.

185. During the Relevant Period, Patrice McKinney sent the total amount of $100,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $338,538.00 to Patrice McKinney for a total net gain to Patrice McKinney of $238,538.00 (collectively, the "Patrice McKinney Transfers"). *See* Schedule of Patrice McKinney Transfers, attached as **Exhibit 53**.

***Bolden Capital Group, LLC***

186. Defendant, Bolden Capital Group, LLC, is a limited liability company in the State of Georgia.

187. During the Relevant Period, Bolden Capital Group, LLC sent the total amount of $200,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $435,000.00 to Bolden Capital Group, LLC for a total net gain to Bolden Capital Group, LLC of $235,000.00 (collectively, the "Bolden Capital Group, LLC Transfers"). *See* Schedule of Bolden Capital Group, LLC Transfers, attached as **Exhibit 54**.

***John Gabriel Mellein and Jamie L. Mellein***

188. Defendant, John Gabriel Mellein, is a citizen of the State of California.

189. Defendant, Jamie L. Mellein, is a citizen of the State of California.

190. During the Relevant Period, John Gabriel Mellein and Jamie L. Mellein (collectively, the "Mellein Parties") sent the total amount of $400,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $620,000.00 to the Mellein Parties for a total net gain to the Mellein Parties of $220,000.00 (collectively, the "Mellein Parties Transfers"). *See* Schedule of Mellein Parties Transfers, attached as **Exhibit 55**.

***L-C Green AG Developers, Ltd.***

191. Defendant, L-C Green AG Developers Ltd., is a stock corporation in the State of California.

192. During the Relevant Period, the Receivership Entities sent the total amount of $220,000.00 to L-C Green AG Developers, Ltd. for a total net gain to L-C Green AG Developers, Ltd. of $220,000.00 (collectively, the "L-C Green AG Developers, Ltd. Transfers"). *See* Schedule of L-C Green AG Developers, Ltd. Transfers, attached as **Exhibit 56**.

***Joi A. Robinson***

193. Defendant, Joi A. Robinson, is a citizen of the State of Maryland.

194. During the Relevant Period, Joi A. Robinson sent the total amount of $40,200.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $252,000.00 to Joi A. Robinson for a total net gain to Joi A. Robinson of $211,800.00 (collectively, the "Joi A. Robinson Transfers"). *See* Schedule of Joi A. Robinson Transfers, attached as **Exhibit 57**.

***Alejandro D. Canto***

195. Defendant, Alejandro D. Canto, is a citizen of the State of Florida.

196. During the Relevant Period, the Receivership Entities sent the total amount of $210,000.00 to Alejandro D. Canto for a total net gain to Alejandro D. Canto of $210,000.00 (collectively, the "Alejandro D. Canto Transfers"). *See* Schedule of Alejandro D. Canto Transfers, attached as **Exhibit 58**.

***Strong Holdings Group, LLC***

197. Defendant, Strong Holdings Group, LLC, is a limited liability company in the State of Florida.

198. During the Relevant Period, the Receivership Entities sent the total amount of $210,000.00 to Strong Holdings Group, LLC for a total net gain to Strong Holdings Group, LLC of $210,000.00 (collectively, the "Strong Holdings Group, LLC Transfers"). *See* Schedule of Strong Holdings Group, LLC Transfers, attached as **Exhibit 59**.

***James Keith, and Keith and James, LLC***

199. Defendant, James Keith, is a citizen of the State of Georgia.

200. Defendant, Keith and James, LLC, is a limited liability company in the State of Georgia.

201. During the Relevant Period, James Keith, Keith and James, LLC (collectively, the "Keith Parties") sent the total amount of $100,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $304,000.00 to the Keith Parties for a total net gain to the Keith Parties of

$204,000.00 (collectively, the "Keith Parties Transfers"). *See* Schedule of Keith Parties Transfers, attached as **Exhibit 60**.

***Tammie Mattish***

202. Defendant, Tammie Mattish, is a citizen of the State of Florida.

203. During the Relevant Period, Tammie Mattish sent the total amount of $60,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $201,101.00 to Tammie Mattish for a total net gain to Tammie Mattish of $141,101.00 (collectively, the "Tammie Mattish Transfers"). *See* Schedule of Tammie Mattish Transfers, attached as **Exhibit 61**.

***Ashley Hughes***

204. Defendant, Ashley Hughes, is a citizen of the State of Georgia.

205. During the Relevant Period, the Receivership Entities sent the total amount of $200,000.00 to Ashley Hughes for a total net gain to Ashley Hughes of $200,000.00 (collectively, the "Ashley Hughes Transfers"). *See* Schedule of Ashley Hughes Transfers, attached as **Exhibit 62**.

***Tep Ly Cheam***

206. Defendant, Tep Ly Cheam, is a citizen of the State of California.

207. During the Relevant Period, the Receivership Entities sent the total amount of $200,000.00 to Tep Ly Cheam for a total net gain to Tep Ly Cheam of $200,000.00 (collectively, the "Ashley Hughes,"). *See* Schedule of Ashley Hughes, Transfers, attached as **Exhibit 63**.

***Ynot Capital, Inc.***

208. Defendant, Ynot Capital, Inc., is a corporation in the State of California.

209. During the Relevant Period, the Receivership Entities sent the total amount of $200,000.00 to Ynot Capital, Inc. for a total net gain to Ynot Capital, Inc. of $200,000.00 (collectively, the "Ynot Capital, Inc. Transfers"). *See* Schedule of Ynot Capital, Inc. Transfers, attached as **Exhibit 64**.

***Jason Yarn Beck***

210. Defendant, Jason Yarn Beck, is a citizen of the State of Florida.

211. During the Relevant Period, the Receivership Entities sent the total amount of $197,510.00 to Jason Yarn Beck for a total net gain to Jason Yarn Beck of $197,510.00 (collectively, the "Jason Yarn Beck Transfers"). *See* Schedule of Jason Yarn Beck Transfers, attached as **Exhibit 65**.

***Tavere Johnson***

212. Defendant, Tavere Johnson, is a citizen of the State of Florida.

213. During the Relevant Period, the Receivership Entities sent the total amount of $194,805.96 to Tavere Johnson for a total net gain to Tavere Johnson of $194,805.96 (collectively, the "Tavere Johnson Transfers"). *See* Schedule of Tavere Johnson Transfers, attached as **Exhibit 66**.

***Justin C. Griffin***

214. Defendant, Justin C. Griffin, is a citizen of the State of California.

215. During the Relevant Period, Justin C. Griffin sent the total amount of $150,000.00 to the Receivership Entities, and the Receivership Entities sent the total

amount of $342,000.00 to Justin C. Griffin for a total net gain to Justin C. Griffin of $192,000.00 (collectively, the "Justin C. Griffin Transfers"). *See* Schedule of Justin C. Griffin Transfers, attached as **Exhibit 67**.

***Willy G Contractors, LLC***

216. Defendant, Willy G Contractors, LLC, is a limited liability company in the State of Maryland.

217. During the Relevant Period, Willy G Contractors, LLC sent the total amount of $3,300.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $187,489.00 to Willy G Contractors, LLC, for a total net gain to Willy G Contractors, LLC of $184,189.00 (collectively, the "Willy G Contractors, LLC Transfers"). *See* Schedule of Willy G Contractors, LLC Transfers, attached as **Exhibit 68**.

***Haoran Shi Trade, Inc.***

218. Defendant, Haoran Shi Trade, Inc., is a corporation in the State of California.

219. During the Relevant Period, the Receivership Entities sent the total amount of $180,000.00 to Haoran Shi Trade, Inc., for a total net gain to Haoran Shi Trade, Inc., of $180,000.00 (collectively, the "Haoran Shi Trade, Inc. Transfers"). *See* Schedule of Haoran Shi Trade, Inc. Transfers, attached as **Exhibit 69**.

***JDC Marketing Solutions, LLC***

220. Defendant, JDC Marketing Solutions, LLC, is a limited liability company in the State of Florida.

221. During the Relevant Period, the Receivership Entities sent the total amount of $175,000.00 to JDC Marketing Solutions, LLC, for a total net gain to JDC Marketing Solutions, LLC of $175,000.00 (collectively, the “JDC Marketing Solutions, LLC Transfers”). *See* Schedule of JDC Marketing Solutions, LLC Transfers, attached as **Exhibit 70**.

***Patrick Corneluis McHugh***

222. Defendant, Patrick Cornelius McHugh, is a citizen of the State of Georgia.

223. During the Relevant Period, Patrick Cornelius McHugh sent the total amount of $15,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $190,000.00 to Patrick Cornelius McHugh, for a total net gain to Patrick Cornelius McHugh of $175,000.00 (collectively, the “Patrick Cornelius McHugh Transfers”). *See* Schedule of Patrick Cornelius McHugh Transfers, attached as **Exhibit 71**.

***Bartercorp International, Inc.***

224. Defendant, Bartercorp International, Inc., is a corporation in the State of North Carolina.

225. During the Relevant Period, the Receivership Entities sent the total amount of $174,484.00 to Bartercorp International, Inc., for a total net gain to Bartercorp International, Inc., of $174,484.00 (collectively, the “Bartercorp International, Inc. Transfers”). *See* Schedule of Bartercorp International, Inc. Transfers, attached as **Exhibit 72**.

***Rodney F. Credit and 241 Exotics, LLC***

226. Defendant, Rodney F. Credit, is a citizen of the State of Michigan.

227. Defendant, 241 Exotics, LLC, is a limited liability company in the State of Michigan.

228. During the Relevant Period, Rodney F. Credit and 241 Exotics, LLC (collectively, the "Credit Parties") sent the total amount of $300,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $470,000.00 to the Credit Parties, for a total net gain to the Credit Parties of $170,000.00 (collectively, the "Credit Parties Transfers"). *See* Schedule of Credit Parties Transfers, attached as **Exhibit 73**.

***Elizabeth Rodriguez***

229. Defendant, Elizabeth Rodriguez, is a citizen of the State of Florida.

230. During the Relevant Period, Elizabeth Rodriguez sent the total amount of $15,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $182,660.00 to Elizabeth Rodriguez, for a total net gain to Elizabeth Rodriguez of $167,660.00 (collectively, the "Elizabeth Rodriguez Transfers"). *See* Schedule of Elizabeth Rodriguez Transfers, attached as **Exhibit 74**.

***JJR Wireless Corp.***

231. Defendant, JJR Wireless Corp., is a corporation in the State of Florida.

232. During the Relevant Period, the Receivership Entities sent the total amount of $165,750.00 to JJR Wireless Corp., for a total net gain to JJR Wireless

Corp., of $165,750.00 (collectively, the "JJR Wireless Corp. Transfers"). *See* Schedule of JJR Wireless Corp. Transfers, attached as **Exhibit 75**.

***Richard Chesler***

233. Defendant, Richard Chesler, is a citizen of the State of Florida.

234. During the Relevant Period, the Receivership Entities sent the total amount of $165,436.00 to Richard Chesler, for a total net gain to Richard Chesler of $165,436.00 (collectively, the "Richard Chesler Transfers"). *See* Schedule of Richard Chesler Transfers, attached as **Exhibit 76**.

***Erik Johnson, Katapult Events, LLC, SalesFS, LLC, and Salesforce Properties, LLC***

235. Defendant, Erik Johnson, is a citizen of the State of Florida.

236. Defendant, Katapult Events, LLC, is a limited liability company in the State of Florida.

237. Defendant, SalesFS, LLC, is a limited liability company in the State of Florida.

238. Defendant, Salesforce Properties, LLC, is a limited liability company in the State of Florida.

*239.* During the Relevant Period, Erik Johnson, Katapult Events, LLC, SalesFS, LLC and Salesforce Properties, LLC (collectively, the "Johnson Parties") sent the total amount of $350,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $417,500.00 to the Johnson Parties for a total net gain to the Johnson Parties of $67,500.00 (collectively, the "Johnson

Parties Transfers"). *See* Schedule of Johnson Parties Transfers, attached as **Exhibit 77**.

***Daniel Stammen***

240. Defendant, Daniel Stammen, is a citizen of the State of Texas.

241. During the Relevant Period, the Receivership Entities sent the total amount of $165,000.00 to Daniel Stammen, for a total net gain to Daniel Stammen of $165,000.00 (collectively, the "Daniel Stammen Transfers"). *See* Schedule of Daniel Stammen Transfers, attached as **Exhibit 78**.

***Global JTM Holdings, LLC***

242. Defendant, Global JTM Holdings, LLC, is a limited liability company in the State of California.

243. During the Relevant Period, the Receivership Entities sent the total amount of $158,000.00 to Global JTM Holdings, LLC, for a total net gain to Global JTM Holdings, LLC of $158,000.00 (collectively, the "Global JTM Holdings, LLC Transfers"). *See* Schedule of Global JTM Holdings, LLC Transfers, attached as **Exhibit 79**.

***Lymari Rosa Lopez***

244. Defendant, Lymari Rosa Lopez, is a citizen of the State of California.

245. During the Relevant Period, Lymari Rosa Lopez sent the total amount of $30,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $180,000.00 to Lymari Rosa Lopez, for a total net gain to Lymari Rosa

Lopez of $150,000.00 (collectively, the "Lymari Rosa Lopez Transfers"). *See* Schedule of Lymari Rosa Lopez Transfers, attached as **Exhibit 80**.

***Tracy F. Glasper***

246. Defendant, Tracy F. Glasper, is a citizen of the State of Alabama.

247. During the Relevant Period, Tracy F. Glasper sent the total amount of $50,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $200,000.00 to Tracy F. Glasper, for a total net gain to Tracy F. Glasper of $150,000.00 (collectively, the "Tracy F. Glasper Transfers"). *See* Schedule of Tracy F. Glasper Transfers, attached as **Exhibit 81**.

***Edra Lillian Bonsall***

248. Defendant, Edra Lillian Bonsall, is a citizen of the State of California.

249. During the Relevant Period, Edra Lillian Bonsall sent the total amount of $12,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $158,200.00 to Edra Lillian Bonsall, for a total net gain to Edra Lillian Bonsall of $146,200.00 (collectively, the "Edra Lillian Bonsall Transfers"). *See* Schedule of Edra Lillian Bonsall Transfers, attached as **Exhibit 82**.

***Signature Financial Solutions***

250. Defendant, Signature Financial Solutions, is a company in the State of Florida.

251. During the Relevant Period, the Receivership Entities sent the total amount of $136,117.73 to Signature Financial Solutions, for a total net gain to Signature Financial Solutions of $136,117.73 (collectively, the "Signature Financial

Solutions Transfers”). *See* Schedule of Signature Financial Solutions Transfers, attached as **Exhibit 83**.

***Guiseppe Montopoli***

252. Defendant, Guiseppe Montopoli, is a citizen of the State of Florida.

253. During the Relevant Period, the Receivership Entities sent the total amount of $133,000.00 to Guiseppe Montopoli, for a total net gain to Guiseppe Montopoli of $133,000.00 (collectively, the “Guiseppe Montopoli Transfers”). *See* Schedule of Guiseppe Montopoli Transfers, attached as **Exhibit 84**.

***Angel Benjamin Pomavilla Morocho, Lourdes C. Ortega Huerta, and Leanp Construction, LLC***

254. Defendant, Angel Benjamin Pomavilla Morocho, is a citizen of the State of Maryland.

255. Defendant, Lourdes C. Ortega Huerta, is a citizen of the State of Maryland.

256. Defendant, Leanp Construction, LLC, is a limited liability company in the State of Maryland.

257. During the Relevant Period, Angel Benjamin Pomavilla Morocho, Lourdes C. Ortega Huerta, and Leanp Construction, LLC (collectively, the “Morocho Parties”) sent the total amount of $158,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $312,104.01 to the Morocho Parties, for a total net gain to the Morocho Parties of $154,104.01 (collectively, the “Morocho PartiesTransfers”). *See* Schedule of Morocho Parties Transfers, attached as **Exhibit 85**.

***Monroe Family Enterprises, Ltd.***

258. Defendant, Monroe Family Enterprises, Ltd., is a limited partnership in the State of Alabama.

259. During the Relevant Period, the Receivership Entities sent the total amount of $130,000.00 to Monroe Family Enterprises, Ltd., for a total net gain to Monroe Family Enterprises, Ltd. of $130,000.00 (collectively, the "Monroe Family Enterprises, Ltd. Transfers"). *See* Schedule of Monroe Family Enterprises, Ltd. Transfers, attached as **Exhibit 86**.

***Millar Express, LLC***

260. Defendant, Millar Express, LLC, is a limited liability company in the State of Georgia.

261. During the Relevant Period, Millar Express, LLC sent the total amount of $85,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $215,000.00 to Millar Express, LLC, for a total net gain to Millar Express, LLC of $130,000.00 (collectively, the "Millar Express, LLC Transfers"). *See* Schedule of Millar Express, LLC Transfers, attached as **Exhibit 87**.

***Ann Marie Burton***

262. Defendant, Ann Marie Burton, is a citizen of the State of Georgia.

263. During the Relevant Period, the Receivership Entities sent the total amount of $128,023.00 to Ann Marie Burton, for a total net gain to Ann Marie Burton of $128,023.00 (collectively, the "Ann Marie Burton Transfers"). *See* Schedule of Ann Marie Burton Transfers, attached as **Exhibit 88**.

***Robert Garcon***

264. Defendant, Robert Garcon, is a citizen of the State of New York.

265. During the Relevant Period, the Receivership Entities sent the total amount of $125,000.00 to Robert Garcon, for a total net gain to Robert Garcon of $125,000.00 (collectively, the "Robert Garcon Transfers"). *See* Schedule of Robert Garcon Transfers, attached as **Exhibit 89**.

***PTG 365, LLC and PTG Enterprises, Inc.***

266. Defendant, PTG 365, LLC, is a limited liability company in the State of New York.

267. Defendant, PTG Enterprises, Inc., is a corporation in the State of New York.

268. During the Relevant Period, PTG 365, LLC and PTG Enterprises, Inc. (collectively, the "PTG Parties") sent the total amount of $50,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $175,000.00 to the PTG Parties, for a total net gain to the PTG Parties of $125,000.00 (collectively, the "PTG Parties Transfers"). *See* Schedule of PTG Parties Transfers, attached as **Exhibit 90**.

***New Horizon Trust***

269. Defendant, New Horizon Trust, is a statutory trust in the State of Delaware.

270. During the Relevant Period, New Horizon Trust sent the total amount of $103,000.00 to the Receivership Entities, and the Receivership Entities sent the

total amount of $225,000.00 to New Horizon Trust, for a total net gain to New Horizon Trust of $122,000.00 (collectively, the "New Horizon Trust Transfers"). *See* Schedule of New Horizon Trust Transfers, attached as **Exhibit 91.**

***Rajkumarie Shivmangal***

271. Defendant, Rajkumarie Shivmangal, is a citizen of the State of New York.

272. During the Relevant Period, Rajkumarie Shivmangal sent the total amount of $25,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $146,996.00 to Rajkumarie Shivmangal, for a total net gain to Rajkumarie Shivmangal of $121,996.00 (collectively, the "Rajkumarie Shivmangal Transfers"). *See* Schedule of Rajkumarie Shivmangal Transfers, attached as **Exhibit 92**.

***Iwynn Productions, LLC***

273. Defendant, Iwynn Productions, LLC, is a limited liability company in the State of Maryland.

274. During the Relevant Period, Iwynn Productions, LLC sent the total amount of $180,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $299,023.00 to Iwynn Productions, LLC, for a total net gain to Iwynn Productions, LLC of $119,023.00 (collectively, the "Iwynn Productions, LLC Transfers"). *See* Schedule of Iwynn Productions, LLC Transfers, attached as **Exhibit 93**.

***FQP Supplies, LLC***

275. Defendant, FQP Supplies, LLC, is a limited liability corporation in the State of Florida.

276. During the Relevant Period, FQP Supplies, LLC sent the total amount of $40,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $158,000.00 to FQP Supplies, LLC, for a total net gain to FQP Supplies, LLC of $118,000.00 (collectively, the "FQP Supplies, LLC Transfers"). *See* Schedule of FQP Supplies, LLC Transfers, attached as **Exhibit 94**.

***Business Makeover, LLC***

277. Defendant, Business Makeover, LLC, is a limited liability company in the State of California.

278. During the Relevant Period, the Receivership Entities sent the total amount of $109,237.00 to Business Makeover, LLC, for a total net gain to Business Makeover, LLC of $109,237.00 (collectively, the "Business Makeover, LLC Transfers"). *See* Schedule of Business Makeover, LLC Transfers, attached as **Exhibit 95**.

***Ninjago, Inc.***

279. Defendant, Ninjago, Inc., is a corporation in the State of California.

280. During the Relevant Period, Ninjago, Inc. sent the total amount of $10,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $108,595.00 to Ninjago, Inc., for a total net gain to Ninjago, Inc. of

$98,595.00 (collectively, the "Ninjago, Inc. Transfers"). *See* Schedule of Ninjago, Inc. Transfers, attached as **Exhibit 96**.

***319 Investment Holdings, LLC***

281. Defendant, 319 Investment Holdings, LLC, is a limited liability company in the State of California.

282. During the Relevant Period, the Receivership Entities sent the total amount of $106,100.00 to 319 Investment Holdings, LLC, for a total net gain to 319 Investment Holdings, LLC of $106,100.00 (collectively, the "319 Investment Holdings, LLC Transfers"). *See* Schedule of 319 Investment Holdings, LLC Transfers, attached as **Exhibit 97**.

***Brandon L. Thornhill***

283. Defendant, Brandon L. Thornhill, is a citizen of the State of Texas.

284. During the Relevant Period, Brandon L. Thornhill sent the total amount of $70,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $175,000.00 to Brandon L. Thornhill, for a total net gain to Brandon L. Thornhill of $105,000.00 (collectively, the "Brandon L. Thornhill Transfers"). *See* Schedule of Brandon L. Thornhill Transfers, attached as **Exhibit 98**.

***Christopher Niemczyk***

285. Defendant, Christopher Niemczyk, is a citizen of the State of Florida.

286. During the Relevant Period, Christopher Niemczyk sent the total amount of $145,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $248,000.00 to Christopher Niemczyk, for a total net gain to

Christopher Niemczyk of $103,000.00 (collectively, the "Christopher Niemczyk Transfers"). *See* Schedule of Christopher Niemczyk Transfers, attached as **Exhibit 99.**

***Cohen and Carter, LLC***

287. Defendant, Cohen and Carter, LLC, is a limited liability company in the State of Florida.

288. During the Relevant Period, Cohen and Carter, LLC sent the total amount of $400,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $501,000.00 to Cohen and Carter, LLC, for a total net gain to Cohen and Carter, LLC of $101,000.00 (collectively, the "Cohen and Carter, LLC Transfers"). *See* Schedule of Cohen and Carter, LLC Transfers, attached as **Exhibit 100**.

***Conwell Capital Holdings Trust***

289. Defendant, Conwell Capital Holdings Trust, is a trust in the State of Georgia.

290. During the Relevant Period, the Receivership Entities sent the total amount of $100,000.00 to Conwell Capital Holdings Trust, for a total net gain to Conwell Capital Holdings Trust of $100,000.00 (collectively, the "Conwell Capital Holdings Trust Transfers"). *See* Schedule of Conwell Capital Holdings Trust Transfers, attached as **Exhibit 101**.

***Ching Hung Sun***

291. Defendant, Ching Hung Sun, is a citizen of the State of California.

292. During the Relevant Period, the Receivership Entities sent the total amount of $100,000.00 to Ching Hung Sun, for a total net gain to Ching Hung Sun of $100,000.00 (collectively, the "Ching Hung Sun Transfers"). *See* Schedule of Ching Hung Sun Transfers, attached as **Exhibit 102**.

***Gabriel M. Lopez and Jessica Lopez***

293. Defendant, Gabriel M. Lopez, is a citizen of the State of Florida.

294. Defendant, Jessica Lopez, is a citizen of the State of Florida.

295. During the Relevant Period, Gabriel M. Lopez and Jessica Lopez (collectively, the "Lopez Parties") sent the total amount of $10,000.00 to the Receivership Entities, and the Receivership Entities sent the total amount of $110,000.00 to the Lopez Parties, for a total net gain to the Lopez Parties of $100,000.00 (collectively, the "Lopez Parties Transfers"). *See* Schedule of Lopez Parties Transfers, attached as **Exhibit 103**.

***Ecology Home BH, LLC***

296. Defendant, Ecology Home BH, LLC, is a limited liability company in the State of Florida.

297. During the Relevant Period, the Receivership Entities sent the total amount of $100,000.00 to Ecology Home BH, LLC, for a total net gain to Ecology Home BH, LLC of $100,000.00 (collectively, the "Ecology Home BH, LLC Transfers"). *See* Schedule of Ecology Home BH, LLC Transfers, attached as **Exhibit 104.**

***The Advanced Procurement Team, Inc.***

298. Defendant, The Advanced Procurement Team, Inc., is a corporation in the State of Florida.

299. During the Relevant Period, the Receivership Entities sent the total amount of $100,000.00 to The Advanced Procurement Team, Inc., for a total net gain to The Advanced Procurement Team, Inc., of $100,000.00 (collectively, the "The Advanced Procurement Team, Inc., Transfers"). *See* Schedule of The Advanced Procurement Team, Inc., Transfers, attached as **Exhibit 105.**

## CLAIMS FOR RELIEF

## COUNT I

**(Fraudulent Transfer under Fla. Stat. § 726.105(1)(a), Florida Uniform Fraudulent Transfer Act)**

300. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 299 of this Complaint as if fully set forth herein.

301. This is a claim to avoid and recover a fraudulent transfer pursuant to section 726.105(1)(a), Florida Statutes.

302. As detailed above, the Receivership Entities made the above transfers to the Defendants (collectively, the "Transfers").

303. Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

304. At the time that the Receivership Entities made the Transfers, they were operating a fraudulent and/or Ponzi scheme, were insolvent, and were engaged in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

305. When the Receivership Entities made the Transfers to Defendants, the Receivership Entities intended to incur, or believed, or reasonably should have believed that they would incur, debts beyond their ability to pay them as they became due.

306. The Receivership Entities made the Transfers in furtherance of their fraudulent and/or Ponzi scheme.

307. At the time that the Receivership Entities made the Transfers, they removed and/or concealed assets of the Receivership Entities from the reach of their investors and/or creditors.

308. The Receivership Entities made the Transfers at the direction of their principals, as a result of their fraudulent domination, adverse interest in, and control of the Receivership Entities and as part of their continued breaches of their fiduciary duties to the Receivership Entities.

309. The Receivership Entities had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors. Consequently, the Transfers were inherently fraudulent pursuant to section 726.105(1)(a), Florida Statutes.

310. Because the Transfers were fraudulent under section 726.105(1)(a), Florida Statutes the Receiver may avoid the Transfers pursuant to section 726.109(2).

311. As a direct and proximate result of the Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the customers and creditors who were defrauded by the Receivership Entities and their principals.

WHEREFORE, Plaintiff, Kelly M. Crawford, as the Receiver, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from the Receivership Entities to Defendants in the amount of each Transfer were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT II

**(Fraudulent Transfer under Fla. Stat. §§ 726.105(1)(b) and/or 726.106(1), Florida Uniform Fraudulent Transfer Act)**

312. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 299 of this Complaint as if fully set forth herein.

313. This is a claim to avoid and recover a fraudulent transfer pursuant to sections 726.105(1)(b) and/or 726.106(1), Florida Statutes.

314. As detailed above, the Receivership Entities made the Transfers to Defendants.

315. Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

316. The Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendants, as detailed above.

317. The Receivership Entities had creditors whose claims arose before they made the Transfers to Defendants.

318. At the time that the Receivership Entities made the Transfers to Defendants, they were insolvent and/or would become insolvent because, post-transfer, their remaining assets were unreasonably small in relation to the business or transaction.

319. The Receivership Entities made the Transfers in furtherance of their fraudulent and/or Ponzi scheme.

320. At the time that the Receivership Entities made the Transfers, they removed and/or concealed assets of the Receivership Entities from the reach of their investors and/or creditors.

321. When the Receivership Entities made the Transfers to Defendants, the Receivership Entities were operating a fraudulent and/or Ponzi scheme and thus intended to incur, or believed, or reasonably should have believed that they would incur, debts beyond their ability to pay them as they became due.

322. Because the Transfers were voidable under sections 726.105(1)(b) and/or 726.106(1), Florida Statutes, the Receiver may avoid the Transfers pursuant to section 726.109(2).

323. As a direct and proximate result of the Receivership Entities' voidable Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the customers and creditors who were defrauded by the Receivership Entities and their principals.

WHEREFORE, Plaintiff, Kelly M. Crawford, as the Receiver, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from the Receivership Entities to Defendants in the amount of each Transfer were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on

the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT III
## (Unjust Enrichment as to the Transfers)

324. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 299 of this Complaint as if fully set forth herein.

325. The Receivership Entities conferred a benefit on Defendants when they made the Transfers to Defendants in the amount of the Transfers, all of which were derived from customers of the Receivership Entities' fraudulent scheme. *See* Exhibits 1-105.

326. The Defendants had knowledge of the benefit they received from the Receivership Entities as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

327. It is inherently unfair and inequitable that the funds of customers defrauded in the Receivership Entities' fraudulent scheme are retained by and used to personally benefit Defendants, rather than being returned to the Receivership Estate for the benefit of all the defrauded customers.

328. As a direct and proximate result of Defendants' retention of the Transfers they received from the Receivership Entities, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendants should return the funds they received from the Receivership Entities, and any assets

they may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

WHEREFORE, Plaintiff, Kelly M. Crawford, as Receiver, respectfully requests the Court enter judgment against Defendants: (1) determining that Defendants were unjustly enriched by virtue of their receipt of the Transfers from the Receivership Entities; (2) entering a money judgment against Defendants, in the full amount of the Transfers, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

Respectfully submitted,

*/s/Russell Landy*

Russell Landy
Florida Bar No. 44417
Email: rlandy@dvllp.com
Vincenzo Lamonica
Florida Bar No. 1058073
Email: vlamonica@dvcattorneys.com
DAMIAN | VALORI | CULMO
*Counsel for Plaintiff, Kelly M. Crawford*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965